# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| RICARDO LUNA-DOMINGUEZ, | ) |
| Plaintiff, | ) Case No.: 2:14-cv-0292-GMN-CWH |
| vs. | ) |
| | ) **ORDER** |
| BRIAN WILLIAMS, TIMOTHY CARLMAN, | ) |
| and STEPHEN TORSKY, | ) |
| Defendants. | ) |

Pending before the Court is the Motion for Summary Judgment (ECF No. 16) filed by Defendants Brian Williams, Timothy Carlman, and Stephen Torsky (collectively, "Defendants"). Plaintiff Ricardo Luna-Dominguez ("Plaintiff") filed a Response. (ECF No. 20). For the reasons discussed below, Defendants' Motion for Summary Judgment will be **GRANTED**.

## I.   BACKGROUND

This case arises out of alleged Fourteenth Amendment violations resulting from Plaintiff's six month confinement in the prison "hole." (Compl. at 3, ECF No. 3). Specifically, Plaintiff alleges he was "racially discriminated against" at Southern Desert Correctional Center ("SDCC"), and that he was "unfairly held [in the hole] for six (6) months due to . . . acts of discrimination, racial profiling, deliberate indifference and negligence." (*Id*.).

Plaintiff is a prisoner presently housed at SDCC. (Compl. at 1). On April 3, 2012, Defendant Carlman, a segregation sergeant at SDCC, received "information about a possible heroin transaction routinely done" between two prison gangs, the Paisas and the Surenos, "who worked on the SDCC yard labor crew." (MSJ 2:20-22, ECF No. 16). Defendant Carlman proceeded to obtain a list of all the inmates scheduled to work on yard labor that day and

organized a search team for each of these inmates' cells. (*Id.* at 2:23-26).  The search revealed that several of the inmates, including Plaintiff, possessed pairs of jeans with extra pockets sewn in. (*Id.* at 3:1-3).

Two inmates were each found to have a small amount of "an unknown black tar substance" inside their extra pockets, later verified as black tar heroin. (*Id.* at 3:7-14). Defendant Carlman then decided to "target, retain, search and place in segregation all Paisas who worked on the yard labor crew on April 3, 2012." (Compl. at 5).  Despite the fact that Plaintiff was not found in possession of black tar heroin, Defendant Carlman filed a notice of charges "accusing Plaintiff of being involved in the possession and/or sale of intoxicants," because of Plaintiff's suspected affiliation with the Paisas as well as the extra pocket sewn into his jeans. (MSJ 3:4-6, 15-17; *see* Compl. at 5).  Furthermore, Plaintiff alleges Defendant Carlman told Plaintiff he was "going to stay in the hole for six months for being a 'paisa,' even if he had no involvement in the alleged drug activity." (Resp. at 2, ECF No. 20).  Plaintiff was provided a copy of the charges against him and received a hearing. (MSJ 3:18-28).  At the hearing, Plaintiff declined to call any witnesses in his defense. (*Id.* at 9:9-12).  Plaintiff was found guilty "of the possession and or sale of intoxicants" based on, *inter alia*, the prison's staff report, details of Plaintiff's statement, and the statements of other witnesses. (*Id.* at 3:25-28; Ex. C to MSJ at 6, ECF No. 16-3).

Plaintiff filed his Complaint on February 25, 2014, against two SDCC sergeants and the SDCC warden alleging violations of the Fourteenth Amendment's Equal Protection Clause and Due Process Clause. (*Id.* at 2:3, 2:12).  Specifically, Defendants allegedly violated Plaintiff's Fourteenth Amendment rights because "[Plaintiff] was unfairly targeted based on his ethnic background," "hispanics were being specifically targeted as drug distributers because no other races in the yard labor crew were searched or targeted that day," and, "no evidence was used to find [Plaintiff] guilty during his disciplinary hearing other than a false report made by

Defendant Carlman." (*Id.* at 3:4-14).  Defendants contend, "Plaintiff was charged based on the seriousness of the tip and the evidence found linking him to the movement of drugs within the institution." (*Id.* at 7:17-18).  Furthermore, Defendants assert that, "Plaintiff's guilty finding was certainly based on at least some evidence," and Plaintiff received all necessary protections in regard to his hearing. (*Id.* at 9:16, 23-24).

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.  At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.  DISCUSSION

Defendants assert that Plaintiff's Fourteenth Amendment rights were not violated

because "Plaintiff was charged based on the seriousness of the tip and the allegations made, not based on race," and Plaintiff was found guilty because "the Constitution only mandates that that [sic] some evidence be used to support the decision of guilt." (MSJ 6:24-25, 9:7-8). Conversely, Plaintiff contends "that he was unfairly targeted based on his ethnic background" and that Defendants "denied Plaintiff due process in his disciplinary hearing because no evidence, beyond [Defendant] Carlman's false report, was used to find him guilty of the major violation charges." (Resp. at 1-2).  The Court will first address Plaintiff's equal protection claim and then address the due process claim.

### A.  Equal Protection

"Racial discrimination in prisons and jails is unconstitutional under the Fourteenth Amendment, except for 'the necessities of prison security and discipline.'" *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) (quoting *Cruz v. Beto*, 405 U.S. 319, 321 (1972)).  Further, to succeed on a discrimination claim, a prisoner must show that the defendant acted with a discriminatory intent or purpose to discriminate against him based upon his membership in a protected class. *Washington v. Davis*, 426 U.S. 229, 240 (1976);  *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).  Intentional discrimination occurs when a defendant acted "at least in part *because of* a plaintiff's protected status." *Serrano*, 345 F.3d at 1082.

To avoid summary judgment, a plaintiff "must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was racially motivated." *Bingham v. City of Manhattan Beach,* 329 F.3d 723, 732 (9th Cir. 2003).  Further, when a plaintiff alleges he was targeted because of his membership in a protected class, the plaintiff must show that the defendant's actions "result[ed] in members of a certain group being treated differently from other persons based on membership in that group." *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999); *see, e.g.*, *Remeidio v. Woodford*, 173 Fed. Appx. 636, 638 (9th Cir. 2006).

Here, Plaintiff alleges "that he was unfairly targeted based on his ethnic background" for being a "Paisa." (Resp. at 1-2).  Moreover, Plaintiff avers, "Hispanics were being specifically targeted as drug distributers because no other races in the yard labor crew were searched or targeted that day." (MSJ 2:9-10).  However, Defendant Carlman asserted that he "received information about a possible heroin transaction between members of the Surenos and Paisas," that "this type of drug transaction is routinely done by Yard Labor Inmates," and that Plaintiff "had a small pocket sewn into his jeans" used as a "'routine' method of moving drugs across the yard." (Ex. C to MSJ at 8, ECF No. 16-3).  Plaintiff has not provided any evidence contradicting Defendant Carlman's account or otherwise showing that his decisions were based, even in part, on Plaintiff's ethnicity.  Therefore, Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant Carlman acted "with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano*, 345 F.3d at 1082.  As such, the Court grants Defendants' Motion for Summary Judgment in regard to the equal protection claim.

**B.  Due Process**

Plaintiff asserts that Defendants "knew or should have known there was no evidence against him, but targeted him anyway [because] he was Hispanic and that [Defendant Williams] should have known that Hispanics were the specific targets as drug distributors." (Resp. at 2).  Conversely, Defendants assert, "Plaintiff's guilty finding was certainly based on at least some evidence; Plaintiff's claim that the finding was based on 'no evidence' is belied by the facts and proof shown here." (MSJ 9:16-17).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974).  Yet, the Fourteenth Amendment's Due Process Clause still entitles prisoners to certain protections when they are charged with a disciplinary violation.  *Serrano*,

345 F.3d at 1077.  The protections include the right to present documentary evidence, call witnesses, and to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 1077-78.  Further, prison officials "must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Graves v. Knowles*, 231 Fed. Appx. 670, 671-72 (9th Cir. 2007) (quoting *Wolff*, 418 U.S. at 566).  Moreover, when challenging the validity of a disciplinary hearing, due process "requires only that there be some evidence to support the findings made in the disciplinary hearing." *Superintendent v. Hill*, 472 U.S. 445, 457 (1985).

In *Graves*, a prisoner was denied the ability to call several witnesses during his prison disciplinary proceeding for possession of a controlled substance. *See Graves*, 231 Fed. Appx. at 672.  The Ninth Circuit held that the prison's denial of the prisoner's request to call witnesses did not violate due process because none of the potential witnesses "could offer relevant information about the search," and "[the prisoner] did not indicate what information they would have provided in support of his defense." *Id.* at 673.

Here, Plaintiff asserts that Defendants violated his due process rights because "there was no proof or any evidence that [Plaintiff] was involved in any drug activity." (Compl. at 4).  However, Defendants state, "Plaintiff was found guilty based upon the staff member's report, details of the Plaintiff's statement, and the other evidence gathered." (MSJ 9:9-10).  Thus, Defendants show that the prison has provided "some evidence" supporting the findings that were reached at the hearing. *Hill*, 472 U.S. at 457.

Furthermore, Plaintiff was provided with "a copy of the report more than 24 hours in advance of the hearing" and he was "asked if he wanted to call a witness," which he declined. (MSJ 9:18-21).  Unlike *Graves*, wherein the prisoner was lawfully prohibited from calling any

witnesses without violating his due process rights, here, Plaintiff was not only provided incriminating evidence in advance, but was also given the opportunity to call witnesses during his hearing. (MSJ 9:9-21); *see Graves*, 231 Fed. Appx. at 673.  As such, Plaintiff has failed to raise a genuine issue of material fact in support of the contention that he was denied due process; therefore, Plaintiff's due process claim fails as a matter of law.  Accordingly, the Court will grant Defendants' Motion for Summary Judgment as it relates to the due process claim.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 16) is **GRANTED.**

**IT IS FURTHER ORDERED** that judgment shall be entered in favor of Defendants. The Clerk of the Court is instructed to close the case.

**DATED** this 2nd day of June, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Court